UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| RICHARD JEFFERSON DEIBEL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:18-cv-03791-TWP-MJD |
| | ) | |
| LARRY HOEG, AARON HOEG, and | ) | |
| ROGER STEFFEN, | ) | |
| | ) | |
| Defendants. | ) | |

**ENTRY ON CROSS MOTIONS FOR SUMMARY JUDGMENT**

This matter is before the Court on cross-motions for summary judgment filed under Federal

Rule of Civil Procedure 56.  Plaintiff Richard Jefferson Deibel ("Deibel") asks the Court to enter

summary judgment on the single issue that the return of Deibel's Hy-Pro Corporation ("Hy-Pro")

stock to Hy-Pro was not an essential term of a settlement agreement in a state court action between

Deibel and the Defendants. (Filing No. 52.)  Defendants Aaron Hoeg ("Aaron"), Larry Hoeg

("Larry"), and Roger Steffen ("Roger") (collectively, the "Defendants"), move for summary

judgment on all of Deibel's claims.  (Filing No. 55.)  For the following reasons, the Court **denies**

Deibel's Motion for Summary Judgment and the Court **grants** the Defendants' cross-motion for

summary judgment.

## I.      BACKGROUND

Deibel, Larry, and Roger founded Hy-Pro, a filtration systems business, in 1986 (Filing

No. 53-1 at 3).  After Deibel invested $500.00 into this Indiana corporation at formation, he was

issued 2,500 of the 20,000 shares initially provided for under the Articles of Incorporation (Filing

No. 57-3 at 3; Filing No. 53-2 at 3).  A few months later, Deibel executed a Continuing Guaranty

("Guaranty") for a $100,000.00 Hy-Pro bank loan (Filing No. 53-1 at 4; Filing No. 57-3 at 46–48).

But soon after Hy-Pro started business, Deibel and Larry had a falling out, and Deibel issued an ultimatum: either Larry leaves, or I leave. (Filing No. 53-1 at 5.) When Larry declined to depart, *id.*, Deibel resigned his position as president of the company and within a year resigned from the board of directors and stopped working for Hy-Pro altogether. (Filing No. 57-3 at 6, 7.) He retained, however, his 2,500 shares in the company. *Id.* at 9.

In October 1989, Deibel sued Hy-Pro, Larry, and Roger in state court for (1) breach of an oral agreement to purchase product from Arneff-Thomas (Deibel's prior company), (2) breach of an oral agreement about his pay while at Hy-Pro, and (3) fraud, misrepresentation, and breach of a fiduciary relationship regarding the Guaranty. (Filing No. 53-3.) After extensive negotiations, however, the parties orally settled the case (the "Settlement"). (Filing No. 53-5 at 3.) The Settlement, which was never reduced to writing, was negotiated between counsel for the parties. (Filing No. 57-2 at 5–9, 43–44.) Although Deibel's lawyers have lost all recollection of these negotiations and any resultant Settlement terms, (Filing No. 56-7 at 1–2), Deibel contends that the terms only included a $15,000.00 payment from Hy-Pro to Arneff-Thomas in exchange for Deibel dropping the lawsuit. (Filing No. 57-3 at 11–12.) But Larry, Roger, and their counsel E. Davis Coots ("Attorney Coots") remember the terms differently. Minutes of a Special Meeting of the Board of Directors of Hy-Pro held on August 31, 1992 corroborate the Defendants' recollection and memorialize the following: in exchange for Hy-Pro paying him $15,000.00 and releasing him from the Guaranty, Deibel would drop the lawsuit *and* give up his 2,500 shares in Hy-Pro. (Filing No. 57-2 at 6–8, 28.)

Negotiations ended and Attorney Coots advised that Hy-Pro could cancel Deibel's stock if he did not return it; Hy-Pro terminated the 2,500 shares on August 31, 1992. (Filing No. 57-2 at 28.) After a few months went by and Deibel had yet to receive payment, his counsel asked

Attorney Coots for a copy of the Settlement paperwork, warning that he would, if the paperwork was not promptly returned, move to show cause as to why the Settlement had not yet been honored (Filing No. 53-6). A few weeks went by and the paperwork never arrived, so on November 24, 1992, Deibel's counsel filed a motion in the state court to show cause why the Settlement should not be finalized. (Filing No. 53-7.) The show cause motion indicated that the matter was scheduled for first choice jury trial on August 31, 1992, and that "shortly before the trial date, and after considerable negotiation between the parties, a settlement agreement in the amount of Fifteen Thousand Dollars ($15,000.00) was negotiated by the attorneys and approved by the parties." *Id*. at 2-3. After Hy-Pro, Larry, and Roger failed to respond or appear for the hearing, the state court ordered them "to show cause . . . why a judgment in the amount of $15,000.00 . . . should not be entered" in Deibel's favor. (Filing No. 53-8.) Again, after no response, on February 4, 1993, the state court entered judgment for Deibel in the sum of $15,000.00 plus interest from August 31, 1992 ("State Court Judgment"). (Filing No. 53-9.)

Attorney Coots then sent Deibel's counsel a check for $15,000.00 to satisfy the judgment, indicating that the final issue to be resolved in the Settlement was the return of Deibel's 2,500 shares. (Filing No. 53-10.) Deibel refused to surrender his stock. (Filing No. 53-11; Filing No. 53-12.) On October 28, 1993, Hy-Pro, Larry, and Roger requested, and the Court scheduled, an attorney's conference to finalize the Settlement, including its terms and monetary disbursement. (Filing No. 53-13; Filing No. 53-5 at 4.) The state court docket dated November 19, 1993 reflects "[p]retrial conference held. This matter being disposed of, Clerk is directed to box this file." (Filing No. 53-5 at 4.) This, in Attorney Coots' view, meant that "there was no further disagreement as to what the terms of the settlement were because the litigation was concluded." (Filing No. 53-4 at

9.)  Several months later, in March 1994, Deibel's counsel sent him a letter informing him that Hy-Pro no longer considered him a shareholder.  (Filing No. 61-2 at 38–39.)

Approximately a year after this, on April 24, 1995, Deibel's counsel sent him another letter, reaffirming that Hy-Pro did not consider him a shareholder and letting him know that "you have legal recourse if you choose to exercise it to reassert your right as a shareholder in Hy-Pro Corporation." (Filing No. 56-6 at 11–12.) Almost two years after receiving this letter, Deibel informed Larry "I have yet to determine the full extent of the damages that I have suffered, or the benefits others have enjoyed, from the conversion of my stock and the malicious treatment I have received over the past eight years." (Filing No. 57-3 at 81.)  Just before Deibel sent this letter, the Internal Revenue Service ("IRS") had informed him that, although the IRS considered him a shareholder for taxation purposes, Hy-Pro did not recognize him as having any ownership interest in the company.  *Id.* at 72, 76.  Indeed, since Hy-Pro canceled Deibel's shares in 1992, the company has not sent him any K-1 tax forms, invited him to participate in shareholders votes or meetings, sent him any information about the company, or distributed any payouts to him.  *Id.* at 24–25, 28–30; Filing No. 57-7 at 2.  For his part, Deibel stopped paying taxes on Hy-Pro shares as early as 1994, stopped listing them on his tax filings in 1998 after Hy-Pro refused to provide him with updated K-1 forms, and around that time considered suing Hy-Pro.  (Filing No. 57-3 at 44; Filing No. 61-2 at 32.)

Over twenty years after the latest of events, Hy-Pro's shareholders—Larry, Roger, and Larry's son Aaron, who had received his shares in 1995—sold the company for over $20 million to Donaldson Company, Inc. on May 1, 2017.  (Filing No. 57-4 at 9.)  Deibel, neither informed

nor consulted with concerning the sale prior to its execution, filed the instant action on December 3, 2018 alleging breach of fiduciary duty, conversion, and criminal conversion.[1]  (Filing No. 1.)

## II.     LEGAL STANDARD

The purpose of summary judgment is to "pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  Federal Rule of Civil Procedure 56 provides that summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Hemsworth v. Quotesmith.com, Inc.*, 476 F.3d 487, 489–90 (7th Cir. 2007).  In ruling on a motion for summary judgment, the court reviews "the record in the light most favorable to the non-moving party and draw[s] all reasonable inferences in that party's favor." *Zerante*, 555 F.3d at 584 (citation omitted). "However, inferences that are supported by only speculation or conjecture will not defeat a summary judgment motion."  *Dorsey v. Morgan Stanley*, 507 F.3d 624, 627 (7th Cir. 2007) (citation and quotation marks omitted).  Additionally, "[a] party who bears the burden of proof on a particular issue may not rest on its pleadings, but must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact that requires trial." *Hemsworth*, 476 F.3d at 490 (citation omitted).  "The opposing party cannot meet this burden with conclusory statements or speculation but only with appropriate citations to relevant admissible evidence." *Sink v. Knox County Hosp.*, 900 F. Supp. 1065, 1072 (S.D. Ind. 1995) (citations omitted).

"In much the same way that a court is not required to scour the record in search of evidence to defeat a motion for summary judgment, nor is it permitted to conduct a paper trial on the merits

---

[1] Deibel has since stipulated to the dismissal of his claim for criminal conversion (Filing No. 47).

of [the] claim." *Ritchie v. Glidden Co.*, 242 F.3d 713, 723 (7th Cir. 2001) (citations and quotation marks omitted).  "[N]either the mere existence of some alleged factual dispute between the parties nor the existence of some metaphysical doubt as to the material facts is sufficient to defeat a motion for summary judgment."  *Chiaramonte v. Fashion Bed Grp., Inc.*, 129 F.3d 391, 395 (7th Cir. 1997) (citations and quotation marks omitted).

These same standards apply even when each side files a motion for summary judgment. The existence of cross-motions for summary judgment does not imply that there are no genuine issues of material fact. *R.J. Corman Derailment Serv., LLC v. Int'l Union of Operating Eng'rs.*, 335 F.3d 643, 647 (7th Cir. 2003). The process of taking the facts in the light most favorable to the non-moving party, first for one side and then for the other, may reveal that neither side has enough to prevail without a trial. *Id.* at 648.  "With cross-motions, [the Court's] review of the record requires that [the Court] construe all inferences in favor of the party against whom the motion under consideration is made."  *O'Regan v. Arbitration Forums, Inc.*, 246 F.3d 975, 983 (7th Cir. 2001) (citation and quotation marks omitted).

## III.   DISCUSSION

The parties filed cross-motions for summary judgment, each related to the terms of the Settlement from the state court action.  Deibel argues the return of his Hy-Pro stock to the Defendants was not an essential term of the Settlement.  He asks the Court to enter summary judgment on this issue because he contends it was definitively decided by the state court.  (Filing No. 52; Filing No. 53 at 10.)  For their part, the Defendants move for summary judgment on all of Deibel's claims, arguing the Settlement included payment to Deibel for the dismissal of his claims and for the return of Deibel's Hy-Pro shares.  (Filing No. 55; Filing No. 56.)  And because Deibel knew by at least 1995 that he was no longer considered a shareholder, Defendants contend he is

barred from suing by the statute of limitations and doctrines of equitable estoppel and waiver. (Filing No. 56 at 9.)

A.     **Preliminary Motions**

In addition to these cross-motions for summary judgment, the parties each filed related motions before the Court:  Deibel moved for leave to file a surreply in opposition to the Defendants' motion for summary judgment (Filing No. 71), and the Defendants moved for leave to supplement the record to include inadvertently omitted evidence in support of their reply in support of their motion for summary judgment (Filing No. 75).  The Court will address these two related motions before turning to those for summary judgment.

1.     **Deibel's Motion for Leave to File a Surreply**

Deibel alleges that the Defendants improperly submitted new arguments for the first time in their reply brief in support of their Motion for Summary Judgment, permitting them to file a surreply. (Filing No. 71.) "The purpose for having a motion, response and reply is to give the movant the final opportunity to be heard and to rebut the non-movant's response, thereby persuading the court that the movant is entitled to the relief requested by the motion." *Lady Di's, Inc. v. Enhanced Servs. Billing, Inc.*, No. 1:09CV0340-SEB-DML, 2010 WL 1258052, at *2 (S.D. Ind. Mar. 25, 2010) (quotation omitted).  But "new arguments and evidence may not be raised for the first time in a reply brief.  Reply briefs are for replying, not raising new arguments or arguments that could have been advanced in the opening brief." *Reis v. Robbins*, No. 4:14-CV-00063-RLY-TA, 2015 WL 846526, at *2 (S.D. Ind. Feb. 26, 2015) (quotation omitted). If a reply brief offers new arguments or evidence, courts can equitably permit a surreply. *See, e.g.*, *id.* (granting motion for leave to file a surreply when contentions in reply brief were "new arguments that were set forth for the first time").

Deibel argues that because he is a nonmovant "plaintiff facing potential dismissal of his claims," leave to file a surreply is mandatory. (Filing No. 71 at 2.)  In fact, due process demands this leave: a plaintiff must "'be given an opportunity to respond to an argument or evidence raised as a basis to dismiss his or her claims.'" *Id.* (quoting *Dr. Robert L. Meinders, D.C., LTD. v. United Healthcare, Inc.*, 800 F.3d 853, 858 (7th Cir. 2015)).  In their reply brief (Filing No. 70), the Defendants advance original arguments and designate and rely on four new exhibits (*see* Filing No. 70-1; Filing No. 70-2; Filing No. 70-3; Filing No. 70-4).  Recognizing this, Deibel relays that the Defendants do not oppose his motion.  (Filing No. 71 at 2.)  Upon the Court's review, Deibel's tendered surreply solely responds to new facts and argument provided for the first time in the Defendants' reply about their (1) "understanding of the terms of the Settlement," (Filing No. 71-1 at 1; Filing No. 72 at 1); "purported cancellation of Deibel's shares," *id.* at 3; and (3) "equitable estoppel defense," *id.* at 6.  In his surreply, Deibel also moves to strike certain portions of the Defendants' reply brief for lacking record support for new contentions.  *See id.* at 4 n.2, 5–6, 6, 7. Consonant with due process principles, Deibel must have an opportunity to respond to these fresh contentions, both to challenge them on their merits and to contest their evidentiary support.  *See Dr. Robert L. Meinders, D.C., LTD.*, 800 F.3d at 858.

Because the limited circumstances for allowing a surreply are present here, *see Reis*, 2015 WL 846526, at *2, the Court **grants** Deibel's Motion for Leave to File Surreply in Opposition to Defendants' Motion for Summary Judgment, (Filing No. 71), insofar as it relates to filing a surreply and will consider this already-furnished brief when evaluating the Defendants' Motion for Summary Judgment and their Motion for Leave to Supplement the Record to cure record deficiencies, which the Court turns to now.

**2.      The Defendants' Motion for Leave to Supplement the Record**

In his surreply, Deibel moved to strike portions of the Defendants' reply brief, noting that, in support, they (1) omitted two cited pages of Deibel's deposition in Exhibit L (Filing No. 71-1 at 4 n.2; Filing No. 72 at 4 n.2), (2) attached Larry's deposition instead of Deibel's as Exhibit K, *id.* at 5–6, and (3) attached the wrong Exhibit 24, *id.* at 6, 7.  Because he "is already submitting a surreply and any amendment will require yet more briefing," Deibel urged the Court to bar the Defendants from amending their filings.  *Id.* at 4 n.2; *see also* Filing No. 75 at 2 (noting that after the Defendants' counsel reached out to try "to resolve the omission by stipulation," Deibel's counsel "refused, stating he did not see a reason for 'endless briefing on these motions.'").

In a later filed Motion for Leave to Supplement Record, the Defendants acknowledge the mistake, asking the Court to grant them leave "to include the inadvertently omitted evidence". (Filing No. 75 at 3.)  Because granting the request would not disrupt the proceedings and the failure "was inadvertent and not the result of bad faith" and "did not prejudice [Deibel] in any manner," the Court should permit the Defendants to simply "tender the two missing pages and swap out 'Exhibit 24' for the correct version."  *Id.* at 2, 3.

Upon review of the omitted evidence, the Court agrees with the Defendants—they inadvertently omitted the evidence and neither intentionally concealed nor withheld the evidence in bad faith.  In fact, Deibel had access to the omitted evidence at all times:  the missing evidence comprised two pages from Deibel's own deposition and a letter written by Deibel to the Hy-Pro Chairman and Board of Directors (Filing No. 75-1 at 1–9, 10–19).  The Court, for good cause shown, **grants** the Defendants' Motion for Leave to Supplement Record to Include Inadvertently Omitted Evidence in Support of Defendants' Reply in Support of Their Motion for Summary Judgment (Filing No. 75), and Exhibit L, as amended, shall be accepted.  So, as far as Deibel's

surreply (Filing No. 71-1; Filing No. 72) moved to strike this identified evidence, the Court **denies** this request.

B.     <u>**Summary Judgment Motions**</u>

    1.     <u>**Deibel's Motion for Summary Judgment: Was Deibel's return of Hy-Pro stock to Hy-Pro an essential term of the Settlement?**</u>

Deibel asks this Court to, on collateral estoppel grounds, grant partial summary judgment concluding that the State Court Judgment decisively established his return of the 2,500 Hy-Pro shares was not an essential part of the Settlement (Filing No. 52; Filing No. 53). "Because the preclusive effect of a state court judgment in a federal case is a matter of state rather than of federal law," Indiana law is considered on the issue of collateral estoppel. *Brokaw v. Weaver*, 305 F.3d 660, 669 (7th Cir. 2002) (quotation omitted). "Issue preclusion, or collateral estoppel, bars subsequent relitigation of the same fact or issue where that fact or issue was necessarily adjudicated in a former lawsuit and that same fact or issue is presented in a subsequent suit*." Nat'l Wine & Spirits, Inc. v. Ernst & Young, LLP*, 976 N.E.2d 699, 704 (Ind. 2012) (citing *Hayworth v. Schilli Leasing, Inc.*, 669 N.E.2d 165, 167 (Ind. 1996)). "There are three requirements for the doctrine of collateral estoppel to apply: (1) a final judgment on the merits in a court of competent jurisdiction; (2) identity of the issues; and (3) the party to be estopped was a party or the privity of a party in the prior action." *Id.*

Because the second of these three prongs—the identity of the issues—resolves this Motion, the Court will discuss only it. "The 'identity of the issues' requirement of the collateral-estoppel doctrine is met when an issue that was necessarily adjudicated in the prior proceeding is the same issue presented in the subsequent lawsuit." *Id.* (citing *Afolabi v. Atl. Mortg. & Inv. Corp.*, 849 N.E.2d 1170, 1175 (Ind. Ct. App. 2006)). But "if the issue is one that was not actually litigated

and determined but only one that might have been litigated and determined," this requirement is not met. *Id.*

Deibel's November 24, 1992 Motion for Order to Show Cause detailed that "before the trial date of August 31, 1992, and after considerable negotiations between the parties herein, a settlement agreement in the amount of Fifteen Thousand Dollars ($15,000.00) was negotiated by the attorneys and approved by the parties." (Filing No. 53-7 at 1-2.) Because the "settlement paper work and a settlement check" had not yet been received by Deibel, the motion requested that Hy-Pro, Larry, and Roger "show cause why the settlement agreement should not be finalized".  *Id.* After these Defendants failed to attend a hearing on the matter, the state court granted Deibel's request, ordering them to show cause "why a judgment in the amount of $15,000.00 . . . should not be entered in favor of" Deibel.  (Filing No. 53-8 at 1.)  When Hy-Pro, Larry, and Roger again failed to respond, the state court entered "a judgment in the amount of $15,000.00 . . ." against them.  (Filing No. 53-9.)

Deibel argues that by entering judgment, "the state court necessarily found that the essential terms of the Settlement," including any return of shares, resolved the "claims before it in exchange for the payment of $15,000.00 from the State Court Defendants to Deibel." (Filing No. 53 at 9.) On top of this, Deibel argues, the trial court—following a post-judgment conference requested to finalize the Settlement—"found that it had nothing to do because the matter had" already been resolved.  *Id.* at 9–10.  This resolution of course, argues Deibel, included a determination that the return of shares was not a part of the Settlement.  *Id.* at 10.

In response, the Defendants argue that the state court had not "fully adjudicated" the Settlement terms when it entered judgment.  (Filing No. 56 at 20.)  First, Deibel's motion requesting the order to show cause left "open the possibility that other settlement terms existed"

when "it mentioned only that $15,000 was owed" to Deibel.  *Id.*  And the resultant state court order and judgment "did not purport to decide all the terms of settlement." *Id.* Like the motion, these actions by the state court were "limited to the single issue" of payment.  *Id.* at 21.  Because the state court too was silent on the matter, "the prior judgment did not necessarily decide whether [Deibel] was required to return the shares as part of the [S]ettlement."  *Id.*

Deibel, in reply, contends that the issue of any stock return "was necessarily decided" by the state court because it "could not have enforced the Settlement by granting judgment to Deibel without being satisfied that all essential terms of the Settlement had been met." (Filing No. 63 at 4 (citing *Johnson v. Sprague*, 614 N.E.2d 585, 588 (Ind. Ct. App. 1993).)  If Hy-Pro, Larry, and Roger believed that return of the shares was part of the Settlement's terms, they should have argued that "when Deibel sought to have the Settlement enforced." *Id.*

The designated evidence shows that Deibel asked the state court to order Hy-Pro, Larry, and Roger to show cause why the Settlement "in the amount of Fifteen Thousand Dollars ($15,000.00) . . . . should not be finalized at this time".  (Filing No. 53-7 at 1–2.)  Ultimately, the state court entered "a judgment in the amount of $15,000.00 . . ." for Deibel.  (Filing No. 53-9 at 1.)  At no time did Deibel or the state court discuss any other claimed terms of the Settlement. The proceedings did not mention that Deibel would drop the lawsuit, that Deibel would return the 2,500 Hy-Pro shares, or that Deibel was to be released from the Guaranty. The state court was modestly constrained to the sole issue on which Deibel presented it:  receipt of the negotiated $15,000.00. All other terms of the Settlement were outside the scope of the show cause proceedings and the eventual order on the matter.  The return of the stock was not "necessarily adjudicated in the prior proceeding," *Nat'l Wine & Spirits, Inc.*, 976 N.E.2d at 704, so Deibel cannot rely on collateral estoppel to establish that return of his Hy-Pro stock was not a term of the Settlement.

Because the State Court Judgment does not establish that return of the Hy-Pro stock was not required by the Settlement, the Court **denies** Deibel's Motion for Summary Judgment ([Filing No. 52](#)) on this factually contested matter. (*See* [Filing No. 63 at 3](#) n.1 (Deibel acknowledging "that the parties dispute" the terms of the Settlement).)

### 2. The Defendants' Motion for Summary Judgment: Does the statute of limitations bar Deibel's claims?

The Defendants move for summary judgment because, in their view, Deibel is barred from bringing his claims by the statute of limitations and the doctrines of equitable estoppel and waiver. ([Filing No. 55](#); [Filing No. 56 at 31](#)–39, 39–47, 47–18.)  Moreover, Deibel's claims against Aaron must be dismissed because Deibel cannot prove the elements of either breach of fiduciary duty or conversion against him when Aaron was not issued shares until 1995.  ([Filing No. 56 at 48](#)–51.) Because the Defendants' summary judgment motion can wholly be resolved in their favor on statute-of-limitations grounds, the Court will limit its discussion to that issue.

The Defendants argue that the two-year statute of limitations for both claims, *see* Ind. Code § 34-11-2-4, started to run as early as 1992 and no later than 1995.  *Id.* at 31–32.  From 1992 on, the Defendants never treated Deibel as a shareholder, and Deibel's counsel told him as much, informing him that he could sue to "reassert" his rights in 1995.  *Id.* at 33–34.  After receiving a letter from the IRS also telling him that Hy-Pro no longer deemed him an owner, Deibel in 1997 wrote Larry and Hy-Pro to assert that he had "'yet to determine the full extent of the damages that [he had] suffered, or the benefits others have enjoyed, from the conversion of [his] stock . . . ." *Id.* at 33 (quoting [Filing No. 57-3 at 81](#)).  The next year, Deibel stopped listing the shares on his tax returns. *Id.* at 31. The statute of limitations started running, the Defendants urge, after Deibel received actual and constructive notice—and seemingly acknowledged—that Hy-Pro had canceled

his shares.  *Id.* at 37–39.  Deibel, then, cannot bring a claim stemming from a purported 2017 wrong. *Id.*

In response, Deibel argues that material facts remain disputed about the cancellation of his Hy-Pro shares (Filing No. 63 at 14).  For instance, the meeting minutes where the shares were ostensibly canceled actually "reflect an intent to cancel shares, if necessary, at some point in the future." *Id.* at 15. Indeed, Deibel argues, Larry's interrogatory tracks this understanding because he stated "that Deibel's shares were canceled after Deibel failed to comply with 'numerous requests' that he do so." *Id.* at 16 (quoting Filing No. 61-1 at 32). Because this last "request" came in the form of a letter from Attorney Coots on May 11, 1993, "evidence shows that Deibel's ownership in the Hy-Pro stock was not cancelled before" that date, if at all.  *Id.*  Deibel also challenges the credibility of Larry, arguing that his failure to recall these events from a quarter century ago with laser precision undermines his recollection that the shares were canceled.  *Id.* at 16–17.  To Deibel, "[i]t is reasonable to infer that the reason [Larry] cannot remember any facts supporting these statements is because they did not occur."  *Id.* at 18.

And even if Hy-Pro canceled the shares, Deibel argues that "that action would have been outside the corporation's powers and void" as an *ultra vires* act because "neither Indiana law nor Hy-Pro's articles of incorporation allowed Hy-Pro to unilaterally cancel Deibel's stock." *Id.* at 19, 20. And, Deibel contends, "shareholders were required to give the corporation a right of first refusal should the shareholder wish to 'sell or otherwise dispose of his or her stock.'" *Id.* at 20 (quoting Filing No. 53-2 at 4).  Moreover, because Hy-Pro's articles of incorporation "did not describe any class of shares as redeemable," the corporation could not compel Deibel to redeem stock.  *Id.* at 20–21.  Finally, "since Indiana does not allow one party to own another's property by simply declaring it so, Hy-Pro's unilateral cancellation of Deibel's shares cannot be authorized by"

the Indiana statute permitting a corporation to acquire its own shares. *Id.* at 21 (citing Ind. Code § 23-1-27-2(a)).

Finally, Deibel urges, he "has been injured each time he should have been treated as the other stockholders were treated and was not." *Id.* at 23. In other words, the statute of limitations has reset with each new injury, the latest of which is the "Defendants' denial of Deibel's rights and benefits as a shareholder to participate in the fruits of the Donaldson acquisition." *Id.*. Because the Defendants' ongoing conduct is "akin to a continuing trespass[,] . . . any claim that Deibel may have regarding the injuries he suffered in the 1990s or 2000s are time-barred, but his claims related to the Donaldson acquisition are not." *Id.* at 23, 26.

In reply, the Defendants contend that Deibel's reading of the meeting minutes cancelling his shares, through "speculation and conjecture," misleadingly "parses the language of the minutes to create an inference that the return of shares was not an essential term of the Settlement." (Filing No. 70 at 4.) Instead, these minutes—consistent with the message already relayed by Attorney Coots—confirm that "the Settlement terms included the return of Plaintiff's shares and if Plaintiff did not return them, Hy-Pro was permitted to cancel them." *Id.* And instead of Larry's inability to wholly remember the events surrounding the termination of the shares representing that the cancellation never occurred, this lapse of memory reflects "that the passage of time has served as a great disadvantage to Defendants." *Id.* at 5. And even if he cannot recall every detail, the Defendants contend, Larry testified to "the most important fact of all . . . that, upon the advice of counsel, Hy-Pro did cancel [Deibel]'s shares." *Id.* In any event, Defendants argue, Deibel ignores the parade of evidence showing that he was both actually and constructively notified that Hy-Pro considered his shares canceled. *Id.* at 5–7. In contrast to this evidence, Deibel "fails to offer even a single document to support his inferences that perhaps Hy-Pro never actually canceled the

shares." *Id.* at 8. "Regardless of whether Hy-Pro specifically canceled the shares on August 31, 1992," the Defendants argue, "the undisputed evidence establishes that the shares were canceled before 1994." *Id.* at 8–9.

The Defendants, in reply to Deibel's argument that any cancellation was void as an *ultra vires* act, argue that he "misconstrues and misapplies" the doctrine when "Indiana law expressly permits corporations to cancel" and acquire their own shares. *Id.* at 9, 10 (citing Ind. Code §§ 23-1-25-3, -27-2(a)). In contrast to this express statutory authority, the Defendants argue that *ultra vires* acts are those "that a corporation would have no right to engage in under any circumstances, at any time." *Id.* at 11. And, in addition to statutes permitting the cancellation or acquisition of stock, Hy-Pro's articles of incorporation did not require Deibel "to give Hy-Pro a first right of refusal to purchase his shares where Hy-Pro was the actual party purchasing the shares." *Id.* at 12.

The Defendants, in reply to Deibel's "theory of repeated injuries triggering new causes of action," argue that this claim fails because the cases he cites in support "are specific to nuisance and trespass law, and, more specifically, continuing trespasses." *Id.* at 13. These cases, in contrast to this shareholder dispute, "involve odors and spills, plaintiffs continuously asking for remedies, and a court ordering damages for defendant's conduct." *Id.* at 15. Even so, "[t]he doctrine of continuing wrong will not prevent the statute of limitations from beginning to run when the plaintiff learns of facts that should lead to the discovery of his/her cause of action even if his/her relationship with the tortfeasor continues beyond that point." *Id.* (citing *Doe v. United Methodist Church*, 673 N.E.2d 839, 845 (Ind. Ct. App. 1997)).

In his surreply, Deibel urges that the minutes of the meeting where his shares were purportedly canceled instead merely "states that Deibel's claims were settled in exchange for $15,000." (Filing No. 71-1 at 3; Filing No. 72 at 3.) Because the Defendants now have difficulty

recalling the terms of the Settlement, the "common, ordinary meaning" of the language in the meeting minutes should control. *Id.* at 2.  Further, Deibel contends, the Defendants are not entitled to summary judgment when they "cannot identify any document demonstrating that the Hy-Pro board of directors made an affirmative decision to cancel Deibel's shares." *Id.* at 3.  Indeed, because the Defendants do not have "a corporate record showing that they actually cancelled Deibel's shares," Deibel contends "that the board never actually voted to cancel Deibel's stock." *Id.* at 3–4. In other words, the "Defendants' sloppy adherence to corporate norms supports the conclusion that they never actually voted to cancel Deibel's stock." *Id.* at 4.  While "Deibel does not dispute that Defendants have designated some evidence that could support a finding that the Hy-Pro board voted to cancel Deibel's stock," this evidence does not definitively resolve that material fact "when the designated evidence is viewed in the light most favorable to Deibel." *Id.* at 5.

To obtain a statute of limitations defense at summary judgment, Defendants must prove that (1) the statute of limitations has run, thereby barring plaintiff's claim as a matter of law, and (2) there exist no genuine issues of material fact regarding the time at which plaintiff's claim has accrued and the application of the statute to plaintiff's claim which may be resolved in plaintiff's favor. *Massery v. United States*, 312 F.3d 272, 276 (7th Cir. 2002). While the parties dispute when—or even if—the cause of action accrued, "the determination of when a cause of action accrues is a question for the court." *Doe*, 673 N.E.2d at 841. The action accrues, and the limitation period begins to run, "when the plaintiff knew or, in the exercise of ordinary diligence, could have discovered that an injury had been sustained as a result of the tortious act of another." *Wehling v. Citizens Nat. Bank*, 586 N.E.2d 840, 843 (Ind. 1992).

At the *very* latest, Deibel knew, or should have known, by 1998 that he had potentially sustained an injury because of the acts of the Defendants, whether the Hy-Pro shares were legitimately canceled or not. Starting in 1992, the Defendants denied Deibel's requests for K-1 tax forms, refused him access to corporate records, excluded him from meetings and votes, and never paid him out distributions, (Filing No. 57-3 at 24–25, 28–30; Filing No. 57-7 at 2). This tracks their understanding, right or wrong, that they had canceled Deibel's shares at that time.[2] In March 1994, and again in April 1995, Deibel's counsel told him that Hy-Pro did not consider him a shareholder, (Filing No. 61-2 at 38–39; Filing No. 56-6 at 11–12). In this later letter, counsel informed Deibel that he could sue "to reassert [his] right as a shareholder in Hy-Pro". (Filing No. 56-6 at 11–12.) In 1997, the IRS informed Deibel that Hy-Pro no longer considered him an owner. (Filing No. 57-3 at 72, 76.) Shortly thereafter, Deibel wrote Larry and Hy-Pro to assert that he had "yet to determine the full extent of the damages that [he had] suffered, or the benefits others have enjoyed, from the conversion of [his] stock . . . ." (Filing No. 57-3 at 81.) Tracking this acknowledgment of his belief that he had been wronged, Deibel testified that he considered suing the Defendants in the late 1990s. (Filing No. 61-2 at 32.) Deibel stopped paying taxes on Hy-Pro shares in 1994 and stopped listing them on his tax filings in 1998 after Hy-Pro refused to provide him with updated K-1 forms. (Filing No. 57-3 at 44.)

By the time he stopped listing the shares on his taxes in 1998, Deibel ostensibly acknowledged that he was no longer considered a shareholder. It was then, generously, that it should have become clear to Deibel that he should begin exploring legal action if he believed his

---

[2] Deibel's contention that any cancellation of his stock was an *ultra vires* act misconstrues that timeworn doctrine. Corporate acts made "by and through its proper and duly authorized officers with an honest view of serving corporate ends in a substantial sense, which act is in itself lawful, and not prohibited by charter or otherwise, will be considered within the corporate powers as against an after claim of such corporation that such act is *ultra vires*." *Huntington Brewing Co. v. McGrew*, 64 Ind. App. 273, 112 N.E. 534, 536 (1916). Here, Indiana statute expressly permitted Hy-Pro to cancel or acquire shares. *See* Ind. Code §§ 23-1-25-3, -27-2. And nothing in Hy-Pro's articles of incorporation prohibits it from exercising those explicit statutory rights. (Filing No. 61-1 at 15–21.)

stock had been wrongfully seized.  Under both theories he now forwards—breach of fiduciary duty and conversion—he would have had two years to file his claims.  *See* Ind. Code § 34-11-2-4; *Guar. Tr. Co. of N.Y. v. York*, 326 U.S. 99, 110 (1945) (instructing that federal courts sitting in diversity must apply governing states' statutes of limitations).  It is too late now, decades later, to litigate issues that commenced in 1992.  Indeed, that the players in these events cannot clearly recall the events illustrates why statutes of limitations exist.

The "continuing wrong" theory forwarded by Deibel is unavailing: that doctrine is better suited to scenarios where new injuries arise from *new* acts.  *See Ind. Pipe Line Co. v. Christensen*, 195 Ind. 106, 143 N.E. 596 (1924) (holding that, after a pipeline leaked and a previously successful plaintiff sued the same defendant again, "an action prosecuted to a finality will not bar another action . . . when it is made to appear that the nuisance has not been abated and its continuance has resulted in further injury"); *Stickdorn v. Zook*, 957 N.E.2d 1014 (Ind. Ct. App. 2011) (holding that a dairy farm's discrete productions of nuisance odors and repeated contaminations of streams constituted new and independent injuries).  Here, the new purported injury arises from an *old* act — the 1992 cancellation of the Hy-Pro shares.  It is when he knew, or should have known, about *that* act that the statute of limitations triggered.  The Defendants have demonstrated that Deibel's claim is barred as a matter of law: the statute of limitations has long run since it accrued.  *See Massery*, 312 F.3d at 276.

Because the Court finds the two-year statute of limitations accrued, charitably, in 1998— when Deibel himself stopped listing his Hy-Pro shares on his tax returns—Deibel cannot bring his claims over twenty years later.  The Court, determines judgment is appropriate as a matter of law, and the Defendants' Motion for Summary Judgment (Filing No. 55) is **granted**.

# IV.   CONCLUSION

For the preceding reasons, the Court **GRANTS in part and DENIES in part,** Deibel's Motion for Leave to File a Surreply, (Filing No. 71). It is **granted** as it relates to filing a surreply but **denied** as to striking portions of the Defendants' reply brief.   The Court **GRANTS** the Defendants' Motion for Leave to Supplement the Record, (Filing No. 75).   The Court **DENIES** Deibel's Motion for Summary Judgment, (Filing No. 52). And the Court **GRANTS** the Defendants' Motion for Summary Judgment, (Filing No. 55).  Because the Defendants are entitled to judgment as a matter of law, Deibel's claims are **dismissed**.  Final judgment will issue under separate order.

**SO ORDERED.**

Date:  11/12/2020

Hon. Tanya Walton Pratt, Judge
United States District Court
Southern District of Indiana

DISTRIBUTION:

Brad A. Catlin
PRICE WAICUKAUSKI JOVEN & CAITLIN, LLC
bcatlin@price-law.com

Tracy Nicole Betz
TAFT STETTINIUS & HOLLISTER LLP (Indianapolis)
tbetz@taftlaw.com

Brittany Lyn Shaw
TAFT STETTINIUS & HOLLISTER LLP (Indianapolis)
bshaw@taftlaw.com